REGULUS. The (JAMESON v.). See Case No. 7,198.

---

## Case No. 11,666.

### REICHE et al. v. SMYTHE.

[7 Blatchf. 235.][1]

Circuit Court, S. D. New York. May 9, 1870.[2]

CUSTOMS DUTIES—LIVE ANIMALS—SINGING BIRDS —ACT OF 1866.

1. Under the act of May 16th, 1866 (14 Stat. 48), imposing a duty of 20 per cent. ad valorem

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]
2 [Reversed in 13 Wall. (80 U. S.) 162.]

on all "live animals" imported from foreign countries, singing birds are subject to such duty.

2. This conclusion is not affected by the fact that, in section 23 of the previous act of March 2, 1861 (12 Stat. 193), "animals, living, of all kinds," and, also, "birds, singing," were exempted from duty.

3. The fact, that singing birds were specially mentioned in the previous act of 1861, does not warrant the inference that they are not included in the general term, "live animals," in the act of 1866.

[This was an action at law by Charles Reiche and Henry Reiche against Henry A. Smythe, collector of the port of New York, to recover duties, alleged to have been illegally exacted.]

Benjamin L. Ludington, for plaintiffs.

William Stanley, Asst. Dist. Atty., for defendant.

WOODRUFF, Circuit Judge. This action is brought to recover moneys paid under protest, for duties exacted by the defendant, as collector of the port of New York, upon singing birds, imported by the plaintiffs. By a special act of congress, passed May 16th, 1866 (14 Stat. 48), entitled "An act imposing a duty on live animals," it is enacted, that "there shall be levied, collected, and paid, on all horses, mules, cattle, sheep, hogs, and other live animals, imported from foreign countries, a duty of twenty per centum ad valorem." Under this act, the duty in question was imposed.

It is conceded, that the terms of the act are so comprehensive as, in their proper meaning, to include birds; but it is claimed that the words "live animals," as in fact used in the act, were not intended to include them.

While it is argued that the terms employed in acts imposing a duty upon imported goods and property are to be construed in the sense in which such terms are ordinarily used in trade and commerce, rather than in their strict scientific meaning, no proof is offered, or claimed to exist, that the term "live animals" has any technical or commercial sense or meaning, restricting its natural and ordinary signification.

The only fact to which my attention is called, which the counsel for the defendant supposes requires a discrimination between "live animals" and "birds" is this: By the 23d section of the tariff act of March 2d, 1861 (12 Stat. 193), it is enacted, that "the importation of the articles hereinafter mentioned, and embraced in this section, shall be exempt from duty, that is to say, ambergris, annatto, animal carbon, animals, living, of all kinds, antimony," &c., &c., "bells, berries, birds, singing or other, and land and water fowls, bismuth," &c., &c., through an extended list. It is, therefore, urged, that, inasmuch as congress, in this act of 1861, named "animals, living, of all kinds," and, in the same section, also mentioned singing birds, it must be concluded that it was the intention to recognize a restricted meaning of the word "animals," not including birds, and to introduce and sanction such restricted meaning as a definition of the terms "living animals," and "live animals," when used in the laws regulating duties on imports; and that, hence, when congress, in 1866, imposed a duty of twenty per cent. upon all live animals, and did not also mention birds, it should be held that it was intended that the latter are still to be exempt from duty.

Unfortunately for the plaintiffs, the various acts of congress imposing duties upon imports are too full of examples of tautology and repetition to warrant such an inference. They show very great, and often quite needless, particularity in enumeration, accompanied by general terms plainly including the same things also mentioned in detail. The special act of May 16th, 1866, imposing this duty of twenty per cent., is an example. It says: "All horses, mules, cattle, sheep, hogs, and other live animals, imported," &c. In this partial enumeration, congress did not intend to sanction the idea that horses, mules, cattle, &c., are not, in a legislative sense, live animals; nor to say, that if, hereafter, an act were to be passed admitting "all live animals" free of duty, it must, by reason of this partial enumeration, be held that horses, mules, cattle, sheep, and hogs had been withdrawn from the general meaning of the term "live animals," and, therefore, remained still subject to duty.

Very striking examples of this species of repetition are found in the act of March 2d, 1861, before referred to, which contains the words, "animals, living, of all kinds," and, also, "birds, singing or other," which the plaintiffs claim have created a distinction. Thus, in section 22 of that act, thirty per cent. duty is imposed upon the articles therein mentioned, among which are "articles worn by men, women, or children, of whatever material composed, made up, or made wholly or in part by hand, not otherwise provided for;" and yet, notwithstanding these comprehensive terms, there follow, in the same section, numerous particulars, clearly already embraced in the above language, or in other terms found in the same section, namely, bracelets, braids, chains, curls or ringlets, braces, suspenders, caps, hats, muffs, and tippets of fur, caps, gloves, leggins, mits, socks, stockings, wove shirts and drawers, and all similar articles made on frames, of whatever material composed, clothing, ready made, and wearing apparel of every description, of whatever material composed, except wool, made up, or manufactured wholly or in part by the tailor, seamstress, or manufacturer, hats and bonnets for men, women, and children. Other similar repetitions, resorted to without much attention to general terms before employed, may also be found in that act. It could not for a moment be claimed, that an act admitting all "clothing ready made, and wearing apparel" free of duty, did

not operate to relieve caps, hats, shirts, and drawers, and most or all of the above particulars. Like repetitions are found in section thirteen, and other sections, of the act of July 14th, 1862 (12 Stat. 555), and in schedule C, and other schedules, in the act of July 30th, 1846 (9 Stat. 44). Indeed, more or less of this species of repetition will be found in most of the acts imposing duties on imports, from the earliest legislation on the subject.

While, therefore, I agree that, where the words of the act have a uniform restricted or technical meaning in the arts, or in trade and commerce, which may be referred to as a means of determining the sense in which such words are used in acts forming a part of the regulations of our trade, and that, where the terms are of doubtful signification, such a circumstance as is here relied upon by the plaintiffs might indicate that congress recognized a distinction, or assumed that one did not include the other, there is here no warrant for such a construction of the act as will entitle the plaintiffs to recover. The term "all live animals" is clear, comprehensive, and explicit. The addition of the designation of birds, in a single instance, in a former act, is a casual circumstance, of too slight significance to warrant the court in a practical interpolation, in the later special statute, of an exception to its plain import. And this is especially and conclusively forbidden when, on recurrence to the same previous act, and to many others on the same general subject, we find similar repetitions pervading them all, through a long course of years, where, obviously, there was no intent to introduce new definitions, or, by merely giving some particulars, to restrict the meaning of general terms.

Judgment must be entered for the defendant, with costs.

[This judgment was reversed by the supreme court, where it was carried on writ of error. 13 Wall. (80 U. S.) 162.]